UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 835

------------------------------------------------------------X

JOHN MAUCH,

          Plaintiff,

    - against -

NEW YORK CITY DEPARTMENT OF EDUCATION;
ELLEN PARRIS individually and in her official capacity.

          Defendants.

------------------------------------------------------------X

**COMPLAINT**

Jury Trial Demanded

RECEIVED
FEB - 3 2010
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, JOHN MAUCH, by and through his attorneys, Leeds Morelli & Brown, P.C., alleges, upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.    This is a civil action brought pursuant to 42 U.S.C. § 1983 to redress discrimination against Plaintiff in the terms, conditions and privileges of employment of Plaintiff by the municipal Defendants, as well as deprivation by the municipal Defendants, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States and all the laws and statutes thereunder, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.*, the New York State Human Rights Law, Section 290 *et seq.* of the Executive Law of New York; New York City Administrative Code Title 8 and any other cause of action which can be inferred from the facts set forth herein.

1



2.      The jurisdiction of this Court is invoked under 28 U.S.C. §1331, the doctrine of pendant jurisdiction and the aforementioned statutory provisions.

3.      Venue is proper pursuant to 28 U.S.C. §1391.

4.      The jurisdictional prerequisites to this lawsuit have been fulfilled. Plaintiff has filed a formal administrative complaint with the Equal Employment Opportunity Commission and has received a Right to Sue letter dated December 11, 2009, which is attached as Exhibit A.  This action is filed within 90 days of Plaintiff's receipt of her Right to Sue letter.

5.      More than thirty days have elapsed since service of the notice of claim.  The notice of claim was served on December 1, 2009 in compliance with <u>section fifty-e</u>.  Adjustment or payment thereof has been neglected or refused.

**PARTIES**

6.      Plaintiff, John Mauch ("John"), was and still is a resident of the County of Richmond, State of New York.  Plaintiff was employed as high school dean of Choir Academy of Harlem.

7.      Defendant The Department of Education of the City of New York ("DOE"), at all times hereinafter mentioned, was and still is, an agency of the City of New York, with its

2

principal place of business located at 52 Chambers Street New York, New York 10007. The DOE is the Policymaking body governing the school by which John was employed.

8.     Defendant, Ellen Parris ("Parris"), Principal of the Choir Academy of Harlem ("Choir Academy"), aided, abetted, compelled and/or incited the discriminatory and retaliatory treatment set forth below.  During relevant times, Parris was the principal of Choir Academy and therefore, was responsible for its maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues.  Additionally, Defendant Parris  was a policymaker for Choir Academy, charged with the responsibility of ensuring that employees were not subjected to unlawful retaliation or harassment. She was also responsible for properly training and supervising employees with respect to employment issues.

## BACKGROUND FACTS

9.     Plaintiff is male.

10.     Plaintiff commenced his employment with the DOE on October 16, 1987 as a teacher at Manhattanville Junior High School.

11.     In January 2008, Parris became principal of Choir Academy.  As such, Parris became John's supervisor and rating officer, charged with evaluating John's work performance.

12.     On February 2, 2009, at 8:45 a.m., Parris met with her Administrative Team, which consisted of John, Annette Parker ("Parker"), Philemon Clarke ("Clarke"), and Geisa Cabrera ("Cabrera").

13.     As the meeting came to a close, Parris dismissed the other team members but asked John to remain.  Parris then moved to a seat directly across the table from John, leaned forward across the table, and said to John, "I think for sometime now there has been another dimension to our relationship here at work.  You can't deny that you have feelings for me, can you John?"

14.     In response, John stammered, "[n]o Ellen, I mean, yes. I have feelings for you, you are a great person and have been a good boss.  I am flattered that you should be interested in me, but... but.. no, um."

15.     Despite John's response, Parris asked whether they could move forward with their feelings or remain simply friends.  John stated that they would remain just friends, to which Parris responded, "[w]ell, I can live with that.  Perhaps we can keep the door open for a personal relationship in the future."  To that, John stated again that they would have to remain only friends.

16.     On February 6, 2009 at approximately 2:45 p.m., as John was getting into his car.  Parris grabbed John's wrist and accused John of giving her "mixed messages."  Later that day,

while walking together, Parris slipped her arm through John's, however John pulled

away from her.

17.     On February 23, 2009, John found a personal note from Parris in his work mailbox.  The

note included a photograph of Parris.

18.     Between Approximately February 14, 2009 and February 22, 2009, Parris repeatedly

called John.  During one of these phone conversations, Parris suggested the possibility of

selecting  John for an assistant principal position she was planning to create at Choir

Academy for the upcoming school year.

19.     Parris' continued to call John repeatedly. When John stopped answering her phone calls,

Parris began leaving messages on John's voice mail, recording statements such as, "I

can't operate in a vacuum, I need to know where we stand."

20.     In or around late February or early March 2009, Parris entered John's office and handed

him a greeting card with sexually explicit references written in it.  John, looking for

advice on how to handle the situation, showed the card to assistant principal Cabrera.

21.     On March 16, 2009, John arrived at his office to find a gift box from Brooks Brothers

and a greeting card from Parris.  The box contained two silk ties, one in green and one in

blue, rose petals, in red and yellow were strewn throughout the box.  The card depicted

two people holding hands and John's and Parris' names were labeled above the figures. Parris also wrote in the card, "I am standing right by."

22.   On April 1, 2009, Parris directed John to stop by her office, because, "[w]e have something to talk about and it is not about business." Parris again said that she "[c]an't continue to operate in a vacuum." After repeated demands that John come to her office, he finally capitulated, whereupon she began a conversation about where their personal relationship stands. In response, John stated that he was not interested in a relationship and reminded Parris that when she first suggested a pursuing a romantic relationship, he told her that they were just friends.

23.   Several weeks after the April 1, 2009 incident, Parris called John into her office and told him that Parker and Cabrera both mentioned to her that they thought John was living an alternative lifestyle. Whereupon she said, "I never picked up on it, are you living an alternative lifestyle?" Rather than respond directly, John stated that he was sick and tired of the entire topic.

24.   On April 27, 2009, John received a copy of his formal observation, performed by Parris and Cabrera. This evaluation was overwhelmingly positive, as were all of John's prior evaluations.

6

25.     On June 1, 2009, John received two notices scheduling meetings on June 2, 2009 and June 4, 2009 to discuss John's work performance.  Both meetings had the potential to result in disciplinary action.

26.     On June 9, 2009 John received a letter of commendation from Parris.

27.     On June 10, 2009, Parris sent assistant principal Cabrera into John's office to discuss John's attendance, which had never been an issue prior to this.  Cabrera, as directed by Parris, conducted a 16 year review of John's attendance.

28.     On June 11, 2009, Parris approached John during his lunch duty and whispered into his ear, "I've sent some correspondence to your home."  Parris then abruptly walked away.

29.     On June 16, 2009, John received a letter, at his home, from Parris.  In the letter, Parris excoriates John for his personal shortcomings and expresses feelings of disappointment, frustration, and resentment towards John.

30.     On June 17, 2009, at approximately 9:00 a.m., John showed the letter from Parris to his union representative, Jennifer Washington ("Washington"), and advised her of Parris' sexual harassment, and sought advice concerning how to proceed.

31.     On June 17, 2009, at approximately 5:00 p.m., John received a frantic phone call from

Parris in which she demanded to know, "Why would you show the letter to Jennifer

Washington?"  Parris told John not to speak to Clark about the letter, because Parris'

network leader and supervisor, Michael Laforgia, would then be notified.

32.     On June 18, 2009, Parris entered John's office and demanded that he speak to her in the

hallway.  In the hallway, she stated to John, "I'm very disturbed by our phone call

yesterday. I'm not threatening you or anything, but I'm going to do what I have to do."

33.     On June 22, 2009, John was called into Parris' secretary's office and presented with a

letter of demotion.  John was demoted from his role as a high school dean to a classroom

teacher and received a schedule for full-time classroom teaching duties to be effective

September 2009.

34.     On June 24, 2009, Parris confronted John for being late to the middle school graduation

ceremony.  John explained that he was late due to an emergency at home.  Parris, in

response, wrote and delivered a letter that banned John from the stage of the high school

graduation the following day.

35.     On June 26, 2009, Parris called a meeting which included Cabrera, Washington and

John.  At the meeting, Parris presented John with a letter outlining seventeen of Parris'

criticisms of John's work performance.

8

36.   During that meeting, Washington, John's union representative, noted, "All of these things happened before he was rated and he still received a satisfactory rating."

37.   On September 8, 2009, teachers were to report back to school.  John was advised by the United Federation of Teachers ("UFT") borough representative Evelyn DeJesus ("DeJesus") and district representative Dwayne Clark ("Clark") not to report to Choir Academy.  Instead, John was directed to report to the integrated service center ("ISC") to meet with deputy director of human resources, Judith Rivera ("Rivera.").  John met with Rivera and gave her copies of the EEOC complaint.  Rivera reviewed the documents, then told John not to report to Choir the following day but to return to the ISC.

38.   On September 8, 2009, John received telephone calls from Choir Academy's payroll secretary.  John informed the payroll secretary that, as per the advisement of his union, he was to report directly to the ISC until further notice.  The payroll secretary stated that Parris demanded that John to come to school, set up his classroom, and teach his class until such time that Parris could find a replacement and releases John.

39.   On September 9, 2009, John again reported to ISC.  At approximately 3:00 p.m. John met with Rivera, who told him, "Mr. Mauch, I have looked into this and contacted several departments, I have discussed it with our legal department, and you have to go back to Choir Academy."

9

40.     On September 10, 2009, John was scheduled for a job interview at 11:00 a.m.

41.     On September 10, 2009, John reported to Choir Academy, accompanied by Clark.
        Principal Parris called John and Clark into conference room and, despite being informed
        that John was directed to report to ISC, stated, "Mr Mauch was a no-show for 2 days,
        this is highly unprofessional and unacceptable behavior." Parris went on to refuse to
        allow John to attend his interview at 11:00 a.m. with principal Spencer, instead
        demanding that it be rescheduled after 3:00 p.m.

42.     John was offered a position by Principal Spencer, which John accepted.

43.     On September 16, 2009, Parris refused to release John to his new position.  Instead she
        demanded that John complete the remainder the week at Choir Academy prior to his
        being released.

44.     On September 16, 2009, Parris conducted an exit interview for John.  Present at the
        interview was John, Cabrerra, Parris, and John's new union representative Carolyn
        Bovell.  After the interview closed, John left Parris' office, Parris then demanded that
        John come back in and fix his chair the way it was.  Then Parris walked out of her office
        to face John and said, "You're acting like a child, why don't you grow up?"

## CLAIMS FOR RELIEF

### CAUSES OF ACTION AGAINST
### THE DEPARTMENT OF EDUCATION

45.   By reason of the aforementioned actions, practices and customs of Defendants herein, Defendants have intentionally abridged and violated Plaintiff's federally protected constitutional rights secured by the First and Fourteenth Amendment to the Constitution of the United States, as well as 42 U.S.C. §§ 1983, to be free from sexual harassment and free from retaliation for his opposition to discriminatory practices.

46.   Municipal officials intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

   (A) Defendants had a custom or practice of discriminating against and harassing Plaintiff based on his sex/gender and complaints of harassment.  The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

   (B) Supervisors failed to properly investigate and address allegations of discrimination, harassment and/or retaliation.

11

(C) Inadequate training/supervision was so likely to result in the discrimination, harassment and/or retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

(D) Policymakers engaged in and/or tacitly condoned the aforementioned unlawful conduct.

47.    Based on his sex/gender and/or his opposition to discriminatory practices, Plaintiff was subjected to adverse employment actions and a hostile work environment and quid pro quo harassment, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, <u>et seq.</u>, as well as the New York Executive Law, Human Rights Law, Section 290, <u>et seq.</u>; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7), as well as any other causes of action that may be inferred from the aforementioned claims.

<u>CAUSES OF ACTION AGAINST
ELLEN PARRIS</u>

48.    The individual Defendant unlawfully participated in and/or permitted the aforementioned harassment, discrimination and/or retaliation to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

49.     The individual Defendant aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6) and the New York City Administrative Code Title 8.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, and punitive damages (where appropriate), lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated:  Carle Place, New York
        January 29, 2010

Respectfully Submitted,

LEEDS, MORELLI & BROWN, PC
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

_____
RICK OSTROVE (RO-7248)

13